UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HELIARA OLIVEIRA TINOCO,<br>Petitioner,<br>v.<br>SERGIO ALBARRAN, et al.,<br>Respondents. | No. 1:26-cv-05505-DC-CKD (HC)<br><br><u>ORDER GRANTING PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PETITION FOR WRIT OF HABEAS CORPUS</u><br><br>(Doc. Nos. 16, 17) |

This matter is before the court on Petitioner's motion for a temporary restraining order (Doc. No. 16), filed in conjunction with her first amended petition for a writ of habeas corpus brought under 28 U.S.C. § 2241 (Doc. No. 15), challenging (1) the $25,000 bond required for her release from detention; (2) the conditions of release, which included an ankle monitor; and (3) future detentions absent pre-deprivation notice and a hearing before a neutral arbiter. (Doc. Nos. 15, 16, 22.) The parties do not oppose the court resolving Petitioner's habeas petition together with her motion for temporary restraining order. (Doc. No. 19 at ¶ 2.) For the reasons explained below, the court finds that Respondents violated Petitioner's due process rights when they detained her absent sufficient pre-deprivation process. Thus, the court will grant Petitioner's motion for a temporary restraining order and petition for writ of habeas corpus.

/////

## BACKGROUND

### A. Factual Background

Petitioner Heliara Oliveira Tinoco is a Brazilian national who lawfully entered the United States on a valid B-2 visa in 2019. (Doc. No. 15 at 7–8, 16.) Although Petitioner extended her B-2 nonimmigrant status twice thereafter, she was unable to travel back to Brazil because of the COVID-19 pandemic. (Doc. Nos. 15 at 7–8; 22-1 at 2; 22-2 at 2–3.) Her B-2 nonimmigrant status expired after May 22, 2021. (Doc. Nos. 22-1 at 2; 22-2 at 2–3.)

Before the expiration of her B-2 status, the Department of Homeland Security ("DHS"), through the United States Citizenship and Immigration Services ("USCIS"), received Petitioner's applications for a travel document (Form I-131) and Employment Authorization Document ("EAD") (Form I-765). (Doc. Nos. 22-1 at 2; 22-2 at 7, 9.) These applications were approved, and Petitioner was issued a travel document and EAD, both valid from July 14, 2022, through July 13, 2024. (Doc. Nos. 22-1 at 2; 22-2 at 7, 9.) Petitioner also filed an EB-2 National Interest Waiver ("NIW") immigrant petition and an application for adjustment of status ("AOS") (Form I-485). (Doc. Nos. 15 at 7–8; 22-1 at 2; 22-1 at 2; 22-2 at 5.) Petitioner's NIW petition was denied in 2023 or 2024, and her AOS application was denied on December 11, 2024. (Doc. Nos. 15 at 7–8, 22-1 at 2; 22-2 at 5.)[1]

Since her initial entry into the United States, and throughout and following her attempts to obtain immigration status, Petitioner has built a life for herself in this country. (Doc. No 15 at 7–8.) She has developed friendships, built familial relationships, and founded a successful jewelry business for which she regularly travels domestically. (*Id.* at 8.) In fact, Petitioner provided documentation showing that she took no fewer than fifteen domestic flights between January 22,

---

[1] The court takes judicial notice of the information provided on the USCIS's "Case Status Online" webpage, available at https://egov.uscis.gov// (last visited Sept. 30, 2026). *See* Fed. R. Evid. 201 (providing that the court may take judicial notice of facts that are capable of accurate determination by sources whose accuracy cannot reasonably be questioned); *see also City of Sausalito v. O'Neill*, 386 F.3d 1186, 1223 n.2 (9th Cir. 2004) ("We may take judicial notice of a record of a state agency not subject to reasonable dispute."). This website indicates that Petitioner's AOS Application (Case Number LIN2190380382) (Doc. Nos. 22-1 at 2; 22-2 at 5) was denied on December 11, 2024.

2025, and June 5, 2026. (Doc. Nos. 15 at 8; 22-1 at 2; 22-2 at 11–25.)

On June 5, 2026, during one of her business trips, Petitioner was detained by immigration authorities at Harry Reid International Airport in Las Vegas, Nevada. (Doc. Nos. 15 at 8; 20 at 2.) Petitioner was told that she was being detained because she had overstayed a visa. (Doc. No. 15 at 8.) The Form I-213 Record of Deportable/Inadmissible Alien created for Petitioner upon her detention charged her as removable under 8 U.S.C. § 1227(a)(1)(B) [Immigration and Nationality Act § 237(a)(1)(B)][2] for being a "nonimmigrant overstay," and indicates that she is a "B2 Visitor for Pleasure Overstay."[3] (Doc. No. 20-1.) Upon Petitioner's request, she was granted a custody redetermination hearing on July 7, 2026, where an immigration judge denied her release on bond, finding that Petitioner was "a significant flight risk such that no amount of bond or conditions would secure her future court appearances." (Doc. No. 20-5 at 1.) About two months later, Petitioner's request for an additional custody redetermination hearing was granted, and at that hearing an immigration judge released Petitioner on a $25,000 bond, subject to her enrollment in the alternatives to detention program "as determined by the Department of Homeland Security." (Doc. No. 20-6 at 1.) DHS reserved its right to appeal that bond determination; any such appeal is due by October 5, 2026. (*Id.* at 2.) Petitioner posted bond one week later and was released subject to her surrendering her Brazilian passport and wearing an ankle monitor. (Doc. No. 22 at 2.)

---

[2] This statutory provision, 8 U.S.C. § 1227(a), identifies classes of deportable noncitizens previously admitted to the United States, which includes as relevant here under subsection (1)(B), "[a]ny alien who is present in the United States in violation of . . . any . . . law of the United States, or whose nonimmigrant visa (or other documentation authorizing admission into the United States as a nonimmigrant) has been revoked under section 1201(i) of this title." 8 U.S.C. § 1227(a)(1)(B).

[3] The Form I-213 erroneously indicates that Petitioner only had permission to remain in the United States on her B-2 visa until May 22, 2020. (Doc. No. 20-1 at 2.) However, DHS granted Petitioner two extensions of her B-2 status and issued two Form I-797 Approval Notices (Receipt Numbers MCT2017111964 and MCT2117531547) showing that her lawful B-2 status was extended from May 23, 2020, to at least May 22, 2021. (Doc. No. 22-2 at 2–3.) The court has no reason to doubt the authenticity of these Forms I-797, especially where Respondents do not affirmatively dispute Petitioner's extension assertions (*see* Doc. No. 20 at 4, n.2), and USCIS's Case Status Online portal, https://egov.uscis.gov//, verifies the issuance of these notices. The Form I-213 error in this regard is particularly troubling as it appears Respondents are relying on the information contained in that form as a basis for detention. (*See* Doc. No. 20 at 1–2) (referencing only a May 22, 2020, expiration date).

**B. Procedural Background**

On September 2, 2026, Petitioner filed the pending motion for temporary restraining order and the operative first amended petition for writ of habeas corpus.[4] (Doc. Nos. 15, 16.) Petitioner asserts, in part, that Respondents violated her constitutional right to due process by detaining her without a pre-deprivation hearing, and she seeks: (1) a refund of the $25,000 bond she posted; (2) removal of the restraints placed on her liberty upon her release, including an ankle monitor; and (3) an injunction on her future detention absent pre-deprivation notice and a hearing before a neutral arbiter. (Doc. Nos. 15, 16, 22.)

On September 3, 2026, the court set a briefing schedule and directed Respondents to file a response to the pending motion and amended petition. (Doc. No. 18.) The court also directed Respondents to address the applicability of certain decisions in cases where noncitizen petitioners had overstayed their visas. (*Id.*)

On September 10, 2026, Respondents filed an answer to Petitioner's motion and amended petition in which they distinguish the cases cited by the court in its order and assert that Petitioner is not entitled to relief because she has received all process owed to her under the statute governing her detention, 8 U.S.C. § 1226(a),[5] by virtue of the bond hearings she received in July and September 2026. (Doc. No. 20.) Respondents also assert that this case is likely moot because Petitioner was released on bond. (*Id.* at 5.) On September 11, 2026, Petitioner filed a reply in which she argues that this case is not moot because her release did not fully remedy the injury that occurred at the time of her detention and did not address her request as to any future immigration detention. (Doc. No. 22.)

/////

[4] Petitioner also filed a motion to vacate the notice of voluntary dismissal that she filed on August 11, 2026. (Doc. Nos. 12, 17.) Respondents did not file an opposition to the motion and represented to Petitioner's counsel that they did not object to the motion. (*See* Doc. No. 17 at 3.) The court will deny Petitioner's unopposed motion to vacate as having been rendered moot by this order.

[5] This statutory provision, 8 U.S.C. § 1226(a), provides for discretionary detention of noncitizens "pending a decision on whether [they are] to be removed from the United States."

## LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). "[T]he 'in custody' provision . . . requires only that a petitioner be incarcerated—or, as here, in INS custody—at the time a habeas petition [was] filed." *Abdala v. I.N.S.*, 488 F.3d 1061, 1064 (9th Cir. 2007). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr.*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678 (2001).

## DISCUSSION

### A. Mootness

"[A] case becomes moot when it no longer presents a case or controversy under Article III, § 2 of the Constitution." *Abdala*, 488 F.3d at 1063 (citation modified). For Petitioner's "habeas petition to continue to present a live controversy after [her] release . . . there must be some remaining collateral consequence that may be redressed by success on the petition." *Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021) (citation modified). Supervised release from immigration detention moots a noncitizen's challenge to their extended detention. *Abdala*, 488 F.3d at 1064. Whereas release on bond pursuant to an administratively final bond order moots a noncitizen's challenge to their re-detention by DHS. *Panosyan*, 854 F. App'x at 788.

Respondents argue that Petitioner's challenge to her detention "is likely moot" now that she has been released on bond. (Doc. No. 20 at 5) (citing *Abdala*, 488 F.3d 1061). The court agrees that Petitioner's challenge to the constitutionality of her *ongoing detention* in her original

petition would be mooted by her subsequent release. However, Petitioner's amended habeas petition challenges more than her ongoing detention. (Doc. No. 15 at 31–33.) Petitioner's reply clarifies that, post-release, she challenges the constitutionality of her initial detention without pre-deprivation process such that the post-detention processes provided to her should be found insufficient and Respondents enjoined from re-detaining her without sufficient pre-deprivation process. (Doc. No. 22.) Because Petitioner's September 3, 2026 bond order may still be appealed by the Government and is thus not administratively final until any sooner than October 6, 2026, this court is not "satisfied that the alleged wrongful detention will not recur." *Panosyan*, 854 F. App'x at 788 (citation modified). Therefore, the court finds that Petitioner's challenge as to future re-detentions continues to present a live controversy reviewable by this court. *Compare Panosyan*, 854 F. App'x at 788 (holding that the petitioner's challenge as to his re-detention was moot because the court could "be satisfied that the alleged wrongful detention will not recur absent changed circumstances" in light of the administratively final bond order) (citation modified) *with Nielsen v. Preap*, 586 U.S. 392, 403 (2019) (holding that the class's challenge to their mandatory detention was not mooted by the named plaintiffs' subsequent bond hearings because, in part, one of the named plaintiffs could be re-detained); *see also Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) (finding the issue of whether an injunction on future immigration detentions absent a pre-deprivation bond hearing to be ripe where the petitioner had already been released on bond).

Accordingly, the court finds that Petitioner's first amended habeas petition has not been mooted by her release on bond.

**B. Due Process**

While "[t]he right to be free from temporary detention before adjudication, absent adequate justification, is at least as old as the Magna Carta," "the principle that the government cannot arbitrarily detain people, including noncitizens, has been a central tenet of . . . American legal traditions since the thirteenth century." *Padilla v. U.S. Immigr. and Customs Enf't*, No. 24-2801, 2026 WL 2822044, at *16–17 (9th Cir. 2026). Indeed, "[t]he application of the Fifth Amendment to noncitizens has been repeatedly and resoundingly reaffirmed . . . since *Wong Wing*

*v. United States*, 163 U.S. 228, 238 (1896)." *Padilla*, 2026 WL 2822044, at *11. "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *Rico-Tapia v. Smith*, 806 F. Supp. 3d 1166, 1182 (D. Haw. Oct. 10, 2025). "The Due Process Clause generally 'requires some kind of a hearing before the State deprives a person of liberty or property.'" *Kharitonova v. Albarran*, No. 3:26-cv-01362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026) (citing *Zinermon v. Burch*, 494 U.S. 113, 127 (1990)); *see also Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. Jul. 17, 2025) ("[A]bsent evidence of urgent concerns, a *pre*-deprivation hearing is required to satisfy due process.") (emphasis in original).

There are two steps to analyzing a procedural due process claim. *Berrios v. Albarran*, No. 25-cv-01544-TLN-CSK, 2025 WL 3171140, at *2 (E.D. Cal. Nov. 13, 2025) (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). The first step is to assess whether a protected liberty interest under the Due Process Clause exists. *Id.* "[T]he second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Id.*

1. Liberty Interest

For seven years Petitioner has "lived in American society and contributed her education, skills, and labor to the American public interest." (Doc. No. 15 at 13.) She has established meaningful friendships and built domestic relationships through a long-term relationship with a U.S. citizen partner and her partner's five-year-old son. (*Id.* at 8.) Petitioner has also pursued lawful immigration status, which resulted in DHS granting her temporary work authorization that enabled her to grow a jewelry business in the United States. (*Id.*) Indeed, Petitioner's multiple immigration applications and numerous domestic flights make clear that DHS had recurrent notice that Petitioner remained in the United States long after the expiration of her B-2 visa and corresponding status. Yet, DHS did not decide to detain Petitioner because of her B-2 "visa overstay" until her sixteenth domestic flight in nearly the same number of months—years after the expiration of her B-2 status, and eighteen months after the denial of her AOS application. (Doc. Nos. 15 at 8; 20 at 1–2; 22-2 at 2; 22-2 at 11–25.)

Respondents do not meaningfully explain the delay in Petitioner's detention, nor substantively address Petitioner's argument that the government's decision not to timely detain her vested in her a liberty interest that could not be revoked absent notice and a pre-deprivation hearing before a neutral arbiter.[6] (Doc. Nos. 15 at 10–15; 22 at 3–8.) Instead, Respondents argue that because Petitioner "received the process required under the controlling statute [8 U.S.C. § 1226(a)], [and because] the Ninth Circuit . . . held [in *Rodriguez Diaz*] that process under 8 U.S.C. § 1226(a) complies with the requirements of due process, . . . Petitioner cannot show that the process is unconstitutional as applied to her, particularly where she was granted relief at her second [bond] hearing." (Doc. No. 20 at 1, 4) (citing *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1213 (9th Cir. 2022)). However, in *Rodriguez Diaz*, the Ninth Circuit addressed whether the Due Process Clause entitles a noncitizen whose detention has grown prolonged "to a second bond hearing at which the government bears the burden of proof by clear and convincing evidence," and held that it does not. *Rodriguez Diaz*, 53 F.4th at 1203. The Ninth Circuit also clarified that "we do not foreclose all as-applied challenges to § 1226(a)'s procedures." *Id.* at 1213. As another court in this district recently recognized, the Ninth Circuit in *Rodriguez Diaz* "did not consider whether the Government may seize a person after years of government-sanctioned liberty without affording any prior process." *See Gagik T. v. Chestnut*, 2026 WL 1837413, at *3.

The court is persuaded by Petitioner's argument that "the government['s] . . . decision not to detain a noncitizen, whether by releasing them after detention or by never detaining [them] in

---

[6] Respondents assert that "the Court cannot read Petitioner's actions of overstaying her visa and failing to depart as somehow an affirmative decision by the government not to detain her"; yet, this misconstrues Petitioner's argument which is that the government's inaction in promptly detaining her despite notice as to her ongoing presence in the United States over a number of years amounts to an affirmative decision not to detain her. (Doc. Nos. 20 at 4; 15 at 11); *see also Gagik T. v. Chestnut*, No. 1:26-cv-04337-MWJS, 2026 WL 1837413, at *3 (E.D. Cal. June 25, 2026) ("It is that the Government's course of conduct over six years, taken as a whole, reflected a sustained decision to permit Petitioner's liberty, and it is that decision that gives rise to the interest the Due Process Clause protects."). Further, the court is unpersuaded by Respondents' unsupported argument that the mere fact that Petitioner was not issued a Notice to Appear until June 5, 2026 demonstrates that her ongoing presence in the United States was unknown to the government before that date.

the first place, despite being aware of their presence in the United States, . . . creates a protected liberty interest." (Doc. No. 15 at 11.) In fact, numerous cases in this circuit have found a liberty interest in similar circumstances involving noncitizens who originally entered the United States on a valid visa. *See, e.g.*, *Kharitonova*, 2026 WL 531441, at *2 (finding a vested liberty interest for the petitioner because she remained free from detention for over a decade and the government "made a decision *not* to detain her" while it "processed her asylum application . . . over a period of years") (citation modified) (emphasis in original); *Kalkan v. Chestnut*, No. 1:26-cv-02028-DAD-EFB, 2026 WL 788112 (E.D. Cal. Mar. 20, 2026), *appeal dismissed*, No. 26-3277, 2026 WL 2446315 (9th Cir. 2026) (same where the petitioner had lived in the United States for nearly three years and the government was aware of his presence by virtue of his asylum case but did not promptly detain him); *Medvezhov v. Warden, Golden State Annex Det. Facility*, No. 1:26-cv-05918-KES-SAB, 2026 WL 2234501, at *2 (E.D. Cal. Aug. 3, 2026) (same where the petitioner lived freely in the United States for approximately four years and the government "deci[ded] *not* to detain [him], and instead to grant him work authorization while his asylum claim proceeded") (emphasis in original); *Carrasquel v. Warden, Cal. City Immigration Processing Ctr.*, No. 1:26-cv-06867-DAD-JDP, 2026 WL 2621102 (E.D. Cal. Sept. 4, 2026) (same where the petitioner lived in the United States for twelve years, had been granted temporary protected status after his visa expired, and was not promptly detained after the expiration of either his visa or temporary protected status); *Orozco-Salazar v. Warden Desert View Facility, Adelanto ICE Processing Ctr.*, No. 5:26-cv-04555-KES, 2026 WL 2497334 (C.D. Cal. Aug. 25, 2026) (same where the petitioner lived at liberty for three years, had never applied for alternative work authorization or asylum, and was detained nearly two years after the expiration of his visa); *Chaparro Ayala v. Albarran*, No. 26-cv-09430-CRB, 2026 WL 2722780, at *4 (N.D. Cal. Sept. 15, 2026) (same where the petitioner lived in the United States for seven years and "did not have a single incident of contact with any federal government agency prior to his detention") (citation modified); *Tello Vazquez v. Mullin*, No. 26-cv-2039-KKE, 2026 WL 1911507 (W.D. Wash. July 2, 2026) (similar).

/////

This court will follow the lead of its sister courts and hold that where, as here, a noncitizen builds a life in the United States after being granted entry pursuant to a visa—such that the government was not only aware of but *approved of* the noncitizen's initial presence in the country—that noncitizen develops a vested liberty interest in remaining free from detention when the government does not act to detain the noncitizen pursuant to 8 U.S.C. § 1227(a) and § 1226(a) within a reasonable time following the expiration of their nonimmigrant status.[7]

2. Sufficiency of Procedural Protections

Since Petitioner has a protected liberty interest, the court must determine the procedures necessary to ensure any deprivation of that interest accords with the Constitution. *See Ky Dep't of Corr.*, 490 U.S. at 460 (explaining that the second analytical step of a procedural due process claim "examines whether the procedures attendant upon [the alleged] deprivation were constitutionally sufficient"). To make that determination, the court applies the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Rodriguez Diaz*, 53 F.4th at 1206–07 (applying the *Mathews* test to a procedural due process challenge to a detention under 8 U.S.C. § 1226, explaining that "*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context"); *see also Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context). The *Mathews* test considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest. 424 U.S. at 335.

As established by the above analysis, the first *Mathews* factor weighs in Petitioner's favor because she has a liberty interest in remaining free from detention. The second *Mathews* factor considers the risk that Petitioner's liberty interest may be erroneously deprived by the challenged procedure. Here, the challenged procedure is Petitioner's detention without notice or a pre-deprivation bond hearing pursuant to a detention authority that provides for a post-deprivation custody redetermination hearing upon request.

"The risk of erroneous deprivation of liberty is high absent the procedural safeguard of a

[7] This includes situations referred to as a "visa overstay." (*See* Doc. Nos. 20 at 2; 20-1 at 2.)

pre-deprivation hearing before a neutral decisionmaker." *Orozco-Salazar*, 2026 WL 2497334, at *4 (citation modified); *see also Gagik T.*, 2026 WL 1837413, at *4. Pre-deprivation hearings and post-deprivation custody redetermination hearings present starkly different situations. A pre-deprivation hearing enables a noncitizen to retain their full liberty prior to the hearing, and moreover, it is precisely that liberty that provides the noncitizen full access to their resources and independence which may be crucial to preparing an adequate defense for the hearing. In contrast, a post-deprivation hearing given only upon the noncitizen's request (*see* Doc. No. 20 at 3) deprives the noncitizen of their liberty throughout three requisite procedural steps: the noncitizen becomes informed of their right to seek a hearing if not already so informed, the noncitizen requests a hearing, and a hearing is provided. Further, the circumstance of detention necessarily hinders the noncitizen's ability to adequately prepare to defend herself because she is physically separated from resources and entirely dependent on the mechanisms, protocols, and discretion of the government's detention facilities and operators. *See Orozco-Salazar*, 2026 WL 2497334, at *4 ("Requiring the government to [produce its evidence, if any, that the petitioner is a flight risk or danger] . . . *before* [the petitioner]'s arrest gives him a meaningful opportunity to retain counsel and collect evidence. This is a significant procedural safeguard.") (emphasis in original). Indeed, the unexplained inconsistency in the outcomes of Petitioner's July 7, 2026 and September 3, 2026 hearings, underscores this discrepancy and calls into doubt the adequacy of the post-deprivation process, especially in the face of a constitutional due process challenge.[8] *See Padilla*, 2026 WL 2822044, at *16–19 (reiterating the longstanding principle that noncitizens may not be detained arbitrarily in the United States). The only apparent changes in Petitioner's circumstances between the two bond hearings were the passage of time, Petitioner's knowledge of the process, and

/////

/////

---

[8] The court also notes that the Immigration Judge's order denying Petitioner bond on July 7, 2026, inaccurately states that Petitioner "attempted to renew her visa several times, but it was denied." (Doc. No 20-5.) On the contrary and as noted above, Petitioner successfully renewed her B-2 status twice and then successfully obtained an EAD and travel document during the pendency of her NIW and AOS petitions. (Doc. No. 22-2 at 2–9.)

Petitioner's procurement of counsel; in other words, Petitioner's eligibility for bond had not changed[9]—she simply had greater access to resources that allowed her to better defend herself, as she likely would have had at a pre-deprivation hearing. In sum, the second *Mathews* factor weighs in Petitioner's favor.

As to the final *Mathews* factor, the court acknowledges that the government has an interest in the steady enforcement of its immigration laws but also recognizes that the government's interest in detaining Petitioner without pre-deprivation procedural protections is substantially "low." *Ortega*, 415 F. Supp. 3d at 970. "If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a [pre-deprivation] hearing is low." *Ortega*, 415 F. Supp. 3d at 970. Moreover, "a pre-deprivation hearing imposes only the ordinary administrative burden of a proceeding the Government must conduct in any event" should the noncitizen detained under 8 U.S.C. § 1226(a) request the custody redetermination hearing they are statutorily entitled to. *Gagik T.*, 2026 WL 1837413, at *4. This court therefore finds that the third *Mathews* factor, too, weighs in Petitioner's favor.

Thus, the *Mathews* factors favor Petitioner and illustrate that due process required her to be provided with notice and a pre-deprivation bond hearing before a neutral arbiter prior to her detention in June 2026. As Respondents provide no reason why a pre-deprivation hearing could not be held for Petitioner, and point to no evidence of urgent concerns warranting her detention without a hearing, this court finds that Respondents violated Petitioner's constitutional right to due process by detaining her in June 2026 without prior notice and a pre-deprivation hearing. The proper relief in this case is to permanently enjoin and restrain Respondents from re-detaining Petitioner absent reasonable advance notice and a pre-deprivation hearing before a neutral

[9] This is notable because "[a]fter an initial bond redetermination, [a noncitizen's] request for a subsequent bond redetermination shall be considered only upon a showing that the [noncitizen's] circumstances have *changed materially* since the prior bond redetermination." 8 C.F.R. § 1003.19(e) (emphasis added). Neither the parties nor the second Immigration Judge indicate that anything "changed materially" in the approximately two-month span between Petitioner's custody redetermination hearings, which suggests a use of discretion in granting custody redetermination hearings that is not provided for by the governing statute. *See id.*

adjudicator, and to return Petitioner to the status quo ante litem,[10] meaning her "last uncontested status" immediately preceding detention. *See Abdeltawab v. Arman*, No. 26-cv-01520-MWF-DTB, 2026 WL 1710301, at *1 (C.D. Cal. June 4, 2026) (citation modified) (subsequently ordering removal of the GPS ankle monitor appended to the petitioner upon his earlier court-ordered release from immigration custody in order to "restore [him] to the moment before he was detained without constitutionally adequate process"); *Nazarian v. Noem*, No. 25-cv-02694-KK-DSR, 2026 WL 2659597, at *3 (C.D. Cal. Sept. 8, 2026) (same). Accordingly, Petitioner will be ordered relieved of the financial and physical burdens imposed upon her pursuant to the September 3, 2026, bond hearing, including removal of Petitioner's ankle monitor and return of her passport and bond payment.

**CONCLUSION**

For the reasons set forth above,

1. Petitioner Heliara Oliveira Tinoco's (A-219-901-672) motion for a temporary restraining order (Doc. No. 16) and first amended petition for writ of habeas corpus (Doc. No. 15) are GRANTED as to her due process claim;[11]

2. Respondents are ORDERED to, within five (5) days of the date of entry of this order:

    a. RESTORE Petitioner to the status quo immediately preceding her detention in June 2026, including removal of her ankle monitor and applicable monitoring requirements;

---

[10] Respondents submit that this amounts to the court "substitut[ing] its judgment for that of the [immigration judges]." (Doc. No. 20 at 2, 4.) Not so. Returning Petitioner to the status quo is a remedy for the due process violation Petitioner suffered, which has no bearing on what an immigration judge has ordered, or may order, as to her suitability for bond or supervision.

[11] Because the court is granting the petition on the due process claim (Count Two), the court need not address any additional grounds raised in the petition. *See N.K. v. Noem*, No. 1:26-cv-00292-KES-SAB (HC), 2026 WL 130345, at *1 (E.D. Cal. Jan. 16, 2026) (granting habeas petition as to the second count of the petition and not addressing other counts because the petitioner was entitled to the relief sought based on the court's ruling as to that second count); *Constantinovici v. Bondi*, 806 F. Supp. 3d 1155, 1166 (S.D. Cal. Oct. 10, 2025) (granting habeas petition based on due process claim and "declin[ing] to address the remaining grounds in the Petition for seeking release").

b. RETURN all of Petitioner's documents and possessions (e.g., passport, identification, work permit, Social Security card, etc.); and

c. FACILITATE the return of the bond Petitioner posted in September 2026;

3. Respondents are ORDERED to, within ten (10) days of the date of entry of this order, FILE a notice of compliance with this court;

4. Respondents are permanently ENJOINED AND RESTRAINED from re-arresting Petitioner unless and until they first provide no fewer than seven (7) days' notice and a pre-deprivation hearing during which a neutral decisionmaker considers whether Petitioner is a danger to the community or flight risk such that her physical custody is required;

5. Petitioner's motion to vacate her notice of voluntary dismissal (Doc. No. 17) is DENIED as having been rendered moot by this order; and

6. The Clerk of the Court is directed to enter judgment for Petitioner and close this case.

IT IS SO ORDERED.

Dated: **September 30, 2026**

Dena Coggins
United States District Judge